EDWARD F. CAHILL *vs.* SLAIMEN N. SLAIMEN *et als.*

JUNE 3, 1936.

PRESENT: Moss, Capotosto, Baker, and Condon, JJ.

Moss, J.    This is a suit in equity, brought by the complainant as the owner of several adjoining lots of land in the city of Providence, forming one tract, which stretches from South Main street on the east to South Water street on the west.    The respondents are respectively the beneficial owner, the owner of record, and the mortgagee of another lot of land.    This is bounded on the east by South Main street, on the south by the most easterly part of the complainant's land, and on the southwest and west by a gangway twelve feet wide, lying between this lot and the complainant's most northerly lot, of which latter lot the southern boundary is a prolongation of the southerly boundary line of the respondents' lot.    This gangway is not in dispute and it appears that it is owned in

common by the owners of these two lots, to which its use is appurtenant.

The respondents Slaimen and Silva, the beneficial and record owners, who only will be hereinafter referred to as respondents, claim that there is also another gangway, which extends from South Main street, near the southeast corner of their land, to South Water street, which they have the right to use, and which the complainant is obstructing by a fence and gate at its westerly end. The complainant asserts that there is no such other gangway; that the respondents have been trespassing upon his land and breaking down this fence and threaten to continue such conduct; and that by all-day parking of automobiles they have also been obstructing his use of the admitted gangway. He prays that his title to his land may be quieted; that the respondents may be permanently enjoined from trespassing on his land and from interfering with his fence and may be obliged to repay him for the expense of restoring it after they had damaged it; and that they may be enjoined from obstructing the admitted gangway.

The cause was heard in the superior court on bill, answers and evidence, and a decree was entered granting the relief prayed for. From this decree the respondents have taken an appeal to this court, the grounds stated being substantially that the decree was against the evidence and the weight thereof, and was against the law, and was therefore erroneous.

In trying to prove the existence of a twelve-foot gangway, from street to street, through the complainant's property, the respondents seem to rely considerably on a plat which is in the office of the recorder of deeds of the city of Providence and a copy of a portion of which was introduced in evidence. This plat bears the following notation signed by four men as a committee:

"We the subscribers being of the committee which was chosen and appointed to Regulate ye

first Devision of ye Lotts called Wair House Lotts with ye highway and Gang Ways that was formerly laid out along Providence Town Street this being a Plan thereof.''

It bears also another notation, attested by the Proprietors' clerk, to the effect that at a meeting of the "Proprietors of the common Lands of the Town of Providence on the east side of the seven mile line in Providence" held on May 31, 1746, "this plat or plan was by a clear Voat of the said Proprietors accepted allowed of and confirmed"; and ordered to be filed for record.

This plat shows many lots, the great majority of which are marked as 40 feet wide, and which run from the street later known as South Main street westerly to what was apparently the line of the bank of the Providence river then, South Water street being laid out on filled land much later. Generally, but not always, it shows two adjacent lots, then a 12 foot gangway, then two more lots and then a 12 foot gangway and so on. In particular it shows a 12 foot gangway, (which the respondents rely upon as now legally existent), between two lots, the northerly of which is marked, "Scul Bitt. Charles Tillinghast's house," with a frontage on the street marked as 57½ feet, and the southerly of which is marked "No. 19. Tillinghast's House," with a frontage marked as 40 feet.

A study of this plat and the next one which we shall mention, made in 1839 and recorded, convinces us that the northern line of this alleged gangway, as shown on this plat of 1746, was a straight line located a little south of the line which is now the southerly line of the respondents' land and diverging from it as the distance from South Main street increased.

The main contention of the respondents seems to be that this same gangway is shown, in the same location, on the plat of 1839, above mentioned, which was made in connection with a partition then made between Thomas

Burgess and Peter Pratt, who were at that time owners in common of all the land now included in the complainant's most northerly lot and the respondents' lot and the bent gangway between them. The agreement of partition created this bent gangway, running, from a little west of the middle of the northerly line of the whole tract, southerly and then a little south of east, to the southerly line of the whole tract, the nearest point being $20\frac{1}{2}$ feet from the street, as it then was. The agreement assigned the land on the eastward of this gangway to Thomas Burgess, from whom, by *mesne* conveyances, the respondents have received all of it except a strip about 20 feet deep taken in 1901 for widening South Main street; and the land on the westward of this gangway was assigned to Peter Pratt, from whom it has passed, by *mesne* conveyances, to the complainant. The plat shows the frontage of the Burgess lot as 51 feet.

This plat does indicate also a straight 12 foot gangway as running from South Main street, in a direction a little south of west, to South Water street, in or approximately in the location of the gangway indicated on the 1746 plat, but it shows it as being entirely south of the land being partitioned and on land then belonging solely to other owners, and now belonging to the complainant by a different chain of title. This straight indicated gangway is not mentioned in the partition agreement; and its being indicated thus on the partition plat could not have conferred any rights therein upon Thomas Burgess and his successors in title. It seems probable that it was simply traced on from the 1746 Proprietors' plat.

Philip Tillinghast in 1704-5 and 1708-9 acquired from the Proprietors all the land now belonging to the complainant and the respondents which is involved in this cause; and the uncontradicted testimony was that the records in connection with the acquisition contain nothing about a gangway. He died in 1732. In 1746 all the land later partitioned as aforesaid between Thomas Burgess and Peter Pratt was owned by Charles Tillinghast as devisee under the

will of Philip Tillinghast, his father; and the land to the south had passed, by the same will, to other sons of Philip Tillinghast. The justice before whom this cause was heard ruled that under these conditions the Proprietors had no power in 1746 to lay out and open up any such gangway, and we are strongly inclined to agree with him. But our conclusion from the notations on the plat is that they were not attempting then to lay out or open up any gangways, but only to put on record what they conceived to have been the layout of lots and gangways many years before. It may be *some* evidence of an original layout of the alleged gangway now relied on by the respondents, but in our judgment it is not sufficient, since there was no other convincing evidence that any such gangway was ever actually laid out or opened up on the land, or was ever used as such by the public, and there was strong evidence to the contrary.

Among other things, it is clear from the evidence that at the death of Philip Tillinghast in 1732 he had a warehouse or cooper shop, which was located some forty odd feet west of the street and right across where this gangway would have run, if it had ever been actually laid out as shown on the plat of 1746. The Proprietors' record of a meeting of January 3, 1708-9 shows that he had built "his shop" on one of the 40 foot lots on the "towne street," mistakenly supposing that it had been assigned to him; and that the Proprietors therefore voted that he have that lot "for his labor of laying out the lots being one of the townes commite." Early Records of Providence, Vol. 17, page 250. It seems very probable that this was the "warehouse or cooper shop" above mentioned, which remained there for many years. In the briefs for both sides it is admitted that it existed, apparently in the same location, as late as 1832. In the many deeds introduced in evidence, there is nothing which in our judgment is a reference to this alleged gangway. A little of the eastern end of it is indicated in dotted lines on a plat of 1863, but that plat was mostly taken from the

Burgess-Pratt partition plat and shows this shadowy gangway well to the south of the Burgess-Pratt property. In our judgment it does not strengthen the respondents' contentions.

They have contended, particularly in this court, that their claim of a right of way from street to street is supported by the language of two deeds, dated in 1780 and 1783, respectively, conveying the land which had been devised by Philip Tillinghast to his son Charles and which in 1839 was the Burgess-Pratt land, bounding it southerly on a gangway. They also argue to the same purpose from some other alleged records, which were not put in evidence. In fact the counsel for both sides of this controversy have in their briefs referred to and discussed such records, a practice which is not to be commended. We should not be expected to give any weight to matters which are alleged to appear on such records, but which have not been put in evidence in the cause.

This contention of the respondents is not in our judgment supported by the evidence, which shows no dedication and indicates very clearly to our minds that the "gangway" last above mentioned was merely a driveway, solely on the land belonging in 1839 to Thomas Burgess and Peter Pratt as owners in common, and that no others had any rights in such "gangway." It was not shown on the partition plat nor mentioned in the agreement. In the hearing below, the respondents disclaimed any rights by prescription, and no such rights were proved. Our conclusion is that the respondents have no rights in any such alleged gangway.

On this general phase of the cause we agree with the superior court that the respondents have no right of way either as owners of their land or as members of the public, across the complainant's land.

By the will of Philip Tillinghast there passed to his son Charles in 1732 the house where the latter lived, "with the lands adjoining as far southward as the north side of my warehouse." This established the line which is now the

southerly line of the respondents' property. Charles's house lay north of this line, probably a short distance. Later deeds show that there was a private gangway twenty feet wide running from South Main street to this warehouse, a distance variously given as from about 41 feet to about 48 feet, and that the testator's own house was just south of this gangway. By this will the land south of the above given boundary line was devised, as previously stated, to three other sons of the testator. The will contained the provision "that the land betwixt my now dwelling house and the house where my son Charles liveth shall lie open for the conveniency of both the said houses from the Towne Street so far westward as my warehouse forever."

The superior court held, and in our judgment correctly, that the easement thus created came to an end when the two houses disappeared a great many years ago. Of the land formerly included in this gangway the easterly portion, about twenty feet in depth, was taken by the city for the widening of South Main street in 1901. The fee of the rest of it, bounded on the north by the division line established by the will of Philip Tillinghast, has passed by *mesne* conveyances to the complainant. Its use as a gangway was abandoned a long time ago, and the superior court has found, on evidence which we deem sufficient, that it is free from any rights of the respondents.

That court has found, then, from sufficient evidence, that the land of the complainant, described in his bill of complaint, is free from all rights or claims of the respondents, except for the right of user which they have, in common with him, in the irregular gangway created by the partition between Thomas Burgess and Peter Pratt in 1839. It has also found, from sufficient evidence, that the respondents, under their unjustified claim of a right of way across his land, had been trespassing on his property, and had damaged his fence on South Water street, to an extent which required him to pay a substantial sum for its repair; and that they had also been misusing the irregular gangway by improper

parking of automobiles thereon. The decree then was not erroneous.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John A. Tillinghast*, for complainant.

*James M. Gillrain*, for respondents.